IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LEONARD MCGASKIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:20-cv-891-ECM |
| ) | (WO) |
| OFFICER ABRAHAM, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants Eason Abraham ("Abraham"), James Dickens ("Dickens"), and Samantha Delauder ("Delauder").[1] (Doc. 23). Pursuant to 42 U.S.C. § 1983, Plaintiff Leonard McGaskin ("McGaskin"), a pretrial detainee, asserts claims against each defendant for deprivation of his constitutional right to be free from excessive use of force under the Fourteenth Amendment. The Defendants assert that they are entitled to summary judgment on the basis of qualified immunity. Based on a thorough review of the record, the briefs, and the law, for the reasons to be discussed, the Court concludes that the motion for summary judgment is due to be DENIED.

---

[1] Defendants Dickens and Delauder were incorrectly named in the Complaint as "Officer Dickerson" and "Officer Oaks," respectively. (Doc. 1).

## II. JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute of fact exists "if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996). An issue of fact is "material" if it could "affect the outcome of the case under the governing law." *Id.* The movant bears the initial burden to identify evidence showing no genuine dispute of material fact remains, or that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the movant satisfies this burden, then the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and they do so by citing to particular parts of the record or by showing the cited materials do not establish the presence or absence of a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(c)(1)(A)–(B). If the nonmovant fails to support his version of the facts or to properly address the movant's

version of the facts as required by Rule 56(c), then the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

At the summary judgment stage, the Court must view all evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When parties offer competing versions of the facts, however, and the record "blatantly contradict[s]" the nonmovant's version, such "that no reasonable jury could believe it," the Court should not accept the nonmovant's version on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). And so, if an accurate video recording "obviously contradicts the nonmovant's version of the facts, [the Court] accept[s] the video's depiction instead of the nonmovant's account." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (alterations adopted) (quoting *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)). However, if the video evidence "fails to convey spoken words or tone" or "fails to provide an unobstructed view of the events," then it is "not obviously contradictory," and the nonmovant's version must be credited as to those obstructed moments of the video. *Gee*, 625 F.3d at 1315.

In reviewing whether the nonmoving party has met his burden, the Court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. In a case, such as this one, however, set for non-jury trial:

> if decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has

3

>been incontrovertibly proved. Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not negligence, or that someone acted reasonably or unreasonably, even if that conclusion is deemed 'factual' or involves a 'mixed question of fact and law.' A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

*Turner v. Allstate Ins. Co.,* 491 F. Supp. 3d 1190, 1197–98 (M.D. Ala. 2020) (alteration adopted) (citing *Nunez v. Superior Oil, Co.*, 572 F.2d 1119, 1123–24 (5th Cir. 1978)).[2]

## IV. FACTS[3]

McGaskin's claims arise from a March 11, 2019, incident that occurred during his pretrial detention at the Chilton County Jail, where the defendant officers, Abraham, Dickens, and Delauder, were working. Abraham's body-camera recorded some interactions between McGaskin and the officers but stopped recording before the disputed use of force began.

On the day in question, during the booking process, jail personnel observed that McGaskin was mentally and emotionally upset, and that he appeared under the influence of drugs. He was placed in a holding cell by the dayshift officers. The Defendants later

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

[3] The parties have used a format of listing facts and then responding to those facts as "denied" or "admitted," which is neither required nor desired by this Court. Despite the format adopted by the parties, the Court has set forth a narrative summary of the facts which, while not exhaustive, appear to the Court to be the facts relevant to the pending motion for summary judgment. The facts that follow are viewed in the light most favorable to McGaskin, drawing all reasonable inferences in his favor. *See Anderson*, 477 U.S. at 255.

arrived to work the nightshift. At the beginning of the Defendants' shift, the dayshift officers advised them that the six-foot five-inch and 210-pound McGaskin had a physical altercation with his arresting officer, appeared to be under the influence of narcotics, and was yelling random things. The three Defendants were the only officers on the jail floor and were responsible for the entire jail population. A fourth officer was located in the jail tower, where he could not provide assistance on the jail floor.

While in his cell, McGaskin was talking loudly, and he failed to comply with the orders of the officers to quiet down. Body-camera video shows a verbal altercation between McGaskin and the Defendants, who stood in his cell as McGaskin paced back and forth. At one point, McGaskin raised both fists in front of his face, and said to the officers, "I got these for days." McGaskin tore pieces of a jail-issued Styrofoam cup, placed them in a line near the door of his cell, and said, "if y'all cross that, hey, I'll wear [inaudible] out." Eventually, the officers closed McGaskin's cell door and began to walk away, but they heard a thud come from what they thought was McGaskin's cell. The officers then returned to his cell to restrain McGaskin. As Abraham approached McGaskin with the cell door open, he told McGaskin to put his hands behind his back. McGaskin did not comply. Abraham again ordered McGaskin to put his hands behind his back and placed his hand on McGaskin's shoulder. With some resistance from McGaskin, Abraham physically turned him around and again ordered him to place his hands behind his back. At this point, Abraham's body-camera video stopped recording. While McGaskin claims to have seen

5

Abraham remove his body-camera, the Defendants claim that the body-camera was jarred when McGaskin and Abraham struggled.

After the recording stopped, McGaskin contends that Abraham twisted his hands up behind his back and pushed his head into the wall multiple times, causing a gash on his head. McGaskin next claims that Dickens punched him multiple times, splitting his lip. McGaskin further asserts that Delauder entered the cell and tased him at least twice. Then, according to McGaskin, Dickens hit him, knocking out his artificial tooth. While the Defendants claim they used no force after McGaskin was handcuffed, McGaskin claims he buckled after someone kicked his legs after he was handcuffed. The Defendants further assert that they did not have control over McGaskin during the use of force; however, McGaskin asserts that he did not resist the officers in any way during the use of force against him.

McGaskin claims he suffered the following injuries: a gash about a half-inch long above his left eye, which he says was bleeding profusely; a bloody split lip; a knocked out false tooth; a "little nick" from the taser on his stomach; and continuing migraines, for which he takes over-the-counter medication. The jail nurse examined McGaskin the day after the altercation and noted that he had a cut above his left eye as well as a head injury from an altercation with officers. The nurse's medical report, filed the day after the incident and signed by McGaskin, however, indicates there were no "visible signs of illness, injury, bleeding, pain, or other symptoms suggesting the need for immediate

emergency medical referral."  Although McGaskin initially asked to be sent to the hospital, he did not seek further medical care for these injuries.

## V.  DISCUSSION

The Defendants argue that summary judgment on the basis of qualified immunity is appropriate because McGaskin fails to point to sufficient evidence in the record that proves, if true, the Defendants used excessive force against him.  Qualified immunity is "an *immunity from suit*" that "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).  The defendant official bears the initial burden of showing he was "acting within his discretionary authority." *Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019) (quotations omitted).  The burden then shifts to the plaintiff to show (1) that the defendant "violated a constitutional right" and (2) that "this right was clearly established at the time of the alleged violation." *Patel v. Lanier County*, 969 F.3d 1173, 1181 (11th Cir. 2020) (quotations omitted).  It is undisputed that the Defendants were acting within their discretionary authority.  The Court, therefore, must first determine whether, under the undisputed facts, the Defendants violated McGaskin's Fourteenth Amendment Due Process right to be free from excessive force, and second, whether this right was clearly established at the time of the altercation.

A pretrial detainee has a Fourteenth Amendment Due Process right to be free from excessive force, which is violated if the force used against him "is more severe than is necessary to subdue him or otherwise achieve a permissible governmental objective." *Piazza*, 923 F.3d at 952.  The Court analyzes excessive use of force against pretrial detainees under an objective reasonableness standard akin to the Fourth Amendment's excessive-force standard. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *Patel*, 969 F.3d at 1181–82.[4]  Whether force is objectively unreasonable is a fact-specific inquiry judged "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight," and taking into account jail officials' "legitimate interest" in maintaining order and discipline in the facility. *Kingsley*, 576 U.S. at 397.  It is clearly established, however, that use of force on a non-resistant, compliant detainee is unreasonable and unconstitutionally excessive. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008); *see also Quinette v. Reed*, 805 F. App'x 696, 705 (11th Cir. 2020).

The evidentiary record before the Court reveals multiple disputed issues of material fact.  The parties dispute whether McGaskin resisted the officers during the use of force. According to the Defendants, McGaskin was non-compliant and struggled with them. According to McGaskin, he did not resist the officers at all during the time force was used

---

[4]  Although the Eighth Amendment's "malicious-and-sadistic" intent standard typically governs a prisoner's excessive-force claims, the Supreme Court in *Kingsley* clarified that "a pretrial detainee's Fourteenth Amendment excessive-force claim is governed by a rule of 'objective reasonableness.'" *Patel*, 969 F.3d at 1181.  The Eleventh Circuit has recognized that the standard for Fourteenth Amendment excessive-force claims resembles the Fourth Amendment's excessive-force standard. *Piazza*, 923 F.3d at 952–53.

8

against him. Further, the Defendants assert that no force was used against McGaskin after he was handcuffed. McGaskin tells a different story, recounting that someone kicked his leg after he was handcuffed. The Defendants argue that they are entitled to qualified immunity, pointing to the body-camera recording showing McGaskin to be threatening, noncompliant, and unrestrained leading up to the use of force. Although the body-camera recording reveals that McGaskin was noncompliant and threatening prior to the use of force, it provides no clarity as to what occurred after the video stopped and the disputed force was used.

If a trier of fact credits McGaskin's story, that he was a compliant, non-resisting pretrial detainee when he was punched, kicked, and tased, such conduct falls within that which is clearly established to be excessive force. *See, e.g.*, *Hadley*, 526 F.3d at 1330 (holding a "single punch to the stomach" to a non-resisting detainee was excessive); *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010); *Quinette*, 805 F. App'x at 705 ("[W]here a detainee is not resisting arrest, gratuitous use of force—even a single punch—is excessive.").[5]

The body-camera recording does not elucidate the facts regarding the disputed use of force. Indeed, there is no video evidence that "obviously contradicts" McGaskin's

---

[5] Cases involving the use of force under the Eighth Amendment remain relevant to the Eleventh Circuit's reasonableness inquiry in Fourteenth Amendment excessive-force cases after *Kingsley*. *See Piazza*, 923 F.3d at 952–53.

"version of the facts" as to the events that occurred during the Defendants' use of force. *Gee*, 625 F.3d at 1315. "[W]here the recording does not clearly depict an event or action, and there is evidence going both ways on it," the Court accepts Abraham's "version of what happened." *Shaw*, 884 F.3d at 1097 n.1; *see also Gee*, 625 F.3d at 1315.

On the summary judgment record, then, McGaskin's narrative must be accepted "as controlling." *Buckman v. Morris*, 736 F. App'x 852, 853 (11th Cir. 2018); *see also Gee*, 625 F.3d at 1317 (affirming denial of qualified immunity by accepting plaintiff's version of the facts as true and noting that the force used, per his narrative, would be constitutionally impermissible). Consequently, there is a genuine dispute of material fact as to whether the Defendants used excessive force against McGaskin. As it stands, this is "a classic swearing match, which is the stuff of which . . . trials are made." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)). Therefore, the Defendants' motion for summary judgment is due to be DENIED.

## VI.  CONCLUSION

Accordingly, and for good cause, it is

ORDERED that the Defendants' Motion for Summary Judgment, (doc. 23), is DENIED.

Done this 21st day of October, 2022.

                                      /s/ Emily C. Marks
                                      EMILY C. MARKS
                                      CHIEF UNITED STATES DISTRICT JUDGE